**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INTERACTIVE BROKERS LLC, a Connecticut limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>STEPHANIE LIN FOON WONG,<br><br>Defendant. | Case No. _____ |

**COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF**

Plaintiff Interactive Brokers LLC ("IBLLC") respectfully seeks a judgment from this Court declaring that Defendant Stephanie Lin Foon Wong ("Wong") (a) does not have any arbitration agreement with IBLLC, (b) is not a "Customer" of IBLLC as that term is defined in the rules of the Financial Industry Regulatory Authority ("FINRA"), and, (c) therefore, cannot pursue claims against IBLLC in arbitration without the consent of IBLLC.  IBLLC further respectfully requests that this Court provide injunctive relief enjoining an arbitration (the "Arbitration") that Plaintiff has commenced with FINRA Dispute Resolution Services ("FINRA DRS") against IBLLC.  The Statement of Claim from the Arbitration ("Claim") is attached as **Exhibit A**.  FINRA DRS has assigned the Arbitration the docket number 26-01225.

**THE PARTIES**

1.      Plaintiff IBLLC is a limited liability company organized under Connecticut law and a citizen of New York.

2.      In her Arbitration, Defendant Wong identifies herself as an individual who has "at all times relevant to this action resided in Hong Kong and England."  Exhibit A at ¶ 6.  Wong

1

does not state whether she is citizen of the United States.  However, IBLLC understands that Wong has identified herself as a citizen of Hong Kong.

## JURISDICTION AND VENUE

3.      This Court has federal question jurisdiction under 28 U.S.C. § 1331 because the underlying Arbitration is premised largely upon a purported cause of action under federal law. *See* Exhibit A at ¶¶ 92-117.  This court has "look-through" federal question jurisdiction to enjoin an arbitration where the allegations in the arbitration arise under federal law.  *See Goldman, Sachs & Co. v. Golden Empire Schs. Fin. Auth.,* 764 F.3d 210, 213 (2d Cir. 2014).

4.      Wong consented to the personal jurisdiction of this Court by designating (or not objecting to FINRA DRS's designation of) New York as the hearing location for the Arbitration. *See* **Exhibit B**: June 2, 2026 letter from FINRA DRS at 3; *see also, generally* 9 U.S.C. §§ 7, 9–11 (providing for jurisdiction over an arbitration by the U.S. District Court in the district where the arbitration takes place).

5.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because there is personal jurisdiction over all parties in this District, because Wong's claims against IBLLC are premised upon alleged actions of IBLLC occurring in this District (*i.e.* the execution of securities transactions on the New York Stock Exchange and the NASDAQ), *see* Exhibit A at ¶ 17, and because the Arbitration is proceeding in this District.

## FACTUAL BACKGROUND

### A.      The Arbitration – Procedural Status

6.      On or around May 29, 2026, Wong commenced the Arbitration by filing the Claim with FINRA DRS, which FINRA DRS has captioned as case no. 26-01225.  The Arbitration names IBLLC as the sole Respondent.

7.    FINRA DRS instructed IBLLC to file an answer to the Claim by July 22, 2026. *See* Exhibit B at 2. The parties have agreed to a two-week extension of that deadline.  If necessary, IBLLC plans to file a protective answer that will incorporate by reference this Complaint.  IBLLC will make clear in its answer that it is not submitting to arbitral jurisdiction over Wong's claims.

**B.    The Arbitration – Claims and Context**

8.    In the Arbitration, Wong alleges that her account at Interactive Brokers Hong Kong Ltd ("IBHK") was accessed by one or more unauthorized user(s), who conducted unauthorized trading in her account. *See* Exhibit A at ¶ 24-45 .

9.    Wong alleges that as a result of the allegedly unauthorized trading, her IBHK account declined in value by approximately $4 million.   *See id.* at ¶ 117.

10.    IBHK is not a FINRA member.

11.    Wong has not initiated any claim against IBHK.

12.    Instead, Wong has initiated a FINRA DRS arbitration against IBLLC.

13.    Wong has never held an account at IBLLC, nor has Wong ever made a purchase from IBLLC.

14.    Wong's statement of claim in the Arbitration includes various theories for how IBLLC is supposedly liable for the alleged losses in Wong's IBHK account.  Those theories are distinct from, and irrelevant to, the questions raised in this case, which go solely to whether Wong's claims are arbitrable.

**C.    No Relevant Arbitration Agreement Exists.**

15.    Wong's Claim in the Arbitration attaches an unsigned 2017 form of the IBHK account agreement.  *See id.* at ¶ 13.

16.     While irrelevant because the 2017 agreement is no longer operative (*see* ¶¶ 26-30 below), Wong's assertions about the availability of FINRA arbitration also rest on an incorrect reading of the superseded 2017 agreement.

17.     Wong contends that she is entitled to a FINRA DRS arbitration because the 2017 version of the IBHK customer agreement provided that a customer may submit disputes to arbitration before "any exchange of which IB is a member."  *See id.* at 13.

18.     The Claim seems to assume that "any exchange of which IB is a member" encompasses FINRA.  That assumption is incorrect for two reasons.

19.     First, by definition, FINRA is a self-regulatory organization, not an "exchange."[1]

20.     Second, the "IB" defined in the 2017 version of the customer agreement is IBHK, *not* IBHK and its affiliates, and *not* IBLLC.  *See* Exhibit A at 28.

21.     IBHK is not, and never has been, a member of FINRA.

22.     Moreover, the parties agreed prior to the events giving rise to the Arbitration that the 2017 IBHK account agreement would no longer govern their relationship.

23.     Specifically: on July 16, 2022, Wong executed an updated version of the IBHK Client Agreement.  A copy of the IBHK Client Agreement executed by Wong on July 16, 2022 is attached as **Exhibit C**.

24.     The 2022 IBHK Client Agreement contains Wong's acknowledgment that IBHK could revise the terms of the Client Agreement "by sending notice of the revised Agreement by email or through an electronic notice upon Client log-in to [IBHK 's] platform[.]"  Exhibit C, at ¶ 1(B).

---

[1] *See* About FINRA, https://www.finra.org/about ("FINRA is a self-regulatory organization for member broker-dealers that is responsible under federal law for supervising our member firms.") (last visited July 29, 2026).

25.     The IBHK Client Agreement had been further revised by the time the allegedly unauthorized trading occurred in Wong's account.  The version in effect at the time of the events at issue is attached as **Exhibit D.**

26.     However, those revisions are irrelevant here, because the arbitration-related provision of the 2022 Client Agreement executed by Wong (Exhibit C) is materially identical to the further-updated Client Agreement in place at the time the allegedly unauthorized trading in Wong's accounts occurred (Exhibit D).

27.     A table showing the arbitration provisions of the three different versions of Ms. Wong's IBHK account agreement follows, with emphasis added on the relevant language.  The language that allows for arbitration "before an exchange of which [IBHK] is a member" was removed between the 2017 and 2022 versions.

| 2017 Client Agreement (Defining IBHK as "IB") | 2022 Client Agreement (Defining IBHK as "IBKR") | 2025 Client Agreement (Defining IBHK as "IBKR") |
|---|---|---|
| . . . **Client agrees that any controversy, dispute, claim, or grievance between IB, any IB affiliate** or any of their shareholders, officers, directors employees, associates, or agents, on the one hand, **and Client** or, if applicable, Client's shareholders, officers, directors employees, associates, or agents on the other hand, arising out of, or relating to, this Agreement, or any Account(s) established hereunder in which securities may be traded; any transactions therein; any transactions between IB and Client; any provision of the Client Agreement or any other agreement between IB and Client; or any breach of such transactions or agreements, **shall be resolved by arbitration, in accordance with the rules then prevailing of any one of the following: (a) The Securities and Futures Commission; (b) The Hong Kong International Arbitration Centre or (c) any exchange of which IB is a member**, as the true claimant-in-interest may elect. If Client is the claimant in- interest and has not selected an arbitration forum within ten days of providing notice of Client's intent to arbitrate, IB shall select the forum. | . . . **Client agrees that any controversy, dispute, claim, or grievance between IBKR and Client** arising out of, or relating to, this Agreement, or any Account(s) established hereunder in which securities may be traded; any transactions therein; any transactions between IBKR and Client; any provision of the Agreement or any other agreement between IBKR and Client; or any breach of such transactions or agreements ("Dispute"), **shall be resolved by arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The law of this arbitration clause shall be Hong Kong law. The seat of the arbitration shall be Hong Kong.** The arbitration proceedings shall be conducted in English. The award of the arbitrators, or a majority of them, shall be final, and judgment upon the award rendered may be entered in any court having jurisdiction. | . . . **Client agrees that any controversy, dispute, claim, or grievance between IBKR and Client** arising out of, or relating to, this Agreement, or any Account(s) established hereunder in which securities may be traded; any transactions therein; any transactions between IBKR and Client; any provision of the Agreement or any other agreement between IBKR and Client; or any breach of such transactions or agreements ("Dispute), **shall be resolved by arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The law of this arbitration clause shall be Hong Kong law. The seat of the arbitration shall be Hong Kong.** The arbitration proceedings shall be conducted in English. The award of the arbitrators, or a majority of them, shall be final, and judgment upon the award rendered may be entered in any court having jurisdiction. |

D.    **Wong Is Not A Customer of IBLLC.**

28.    The Claim also alleges that IBLLC is obligated to submit to arbitration with Wong pursuant to FINRA Rule 12200, because IBLLC is a FINRA member and, Wong contends, "[t]his case arises from the catastrophic failure of [IBLLC's] cybersecurity infrastructure, which permitted an unauthorized third party to access Wong's brokerage account[.]" *See* Exhibit A, ¶¶ 1, 11.

29.    However, even if Wong does intend to bring claims only against IBLLC (and not against IBHK —the entity with which she had an account and a customer relationship) IBLLC's mere membership in FINRA does not constitute an agreement by IBLLC to submit to FINRA DRS arbitration with respect to any claim by any person.

30.    Instead, FINRA Rule 12200 provides only that, by becoming FINRA members, firms such as IBLLC agree only to arbitrate certain categories of disputes with their ***customer[s]***.

31.    Specifically, Rule 12200 provides:

> Parties must arbitrate a dispute under the Code if Arbitration under the Code is either: (1) Required by a written agreement, or (2) Requested by the customer; The dispute is between a customer and a member or associated person of a member; and The dispute arises in connection with the business activities of the member or the associated person . . . .

32.    The Second Circuit has explained that a "customer" of a FINRA member under FINRA Rule 12200 is "one who, while not a broker or dealer, either (1) purchases a good or service from a FINRA member, or (2) has an account with a FINRA member." *See Citigroup Glob. Markets Inc. v. Abbar*, 761 F.3d 268, 275-76 (2d Cir. 2014).

33.    Wong has never purchased a good or service from IBLLC, nor has she ever had an account with IBLLC.

34.  Because Wong's account relationship has always been exclusively with IBHK, not IBLLC, this case is governed by the Second Circuit's "bright line" rule that when an investor opens a brokerage account at a foreign brokerage firm affiliated with a US firm, rather than do business directly with a FINRA member, the investor, as a matter of law, is ***not*** a "customer" of her foreign brokerage firm's US affiliate under Rule 12200.  *See Abbar*, 761 F.3d at 277.

35.  If Wong had wanted access to a FINRA DRS arbitration, she "need[ed] only" to have elected to "transact business with a FINRA member or hold an account with one."  *Id.*

## COUNT I: DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

36.  IBLLC realleges by reference all preceding paragraphs of this Complaint.

37.  No arbitration agreement exists between IBLLC and Wong.

38.  There is no basis, including under FINRA's Rules, to require IBLLC to arbitrate with Wong because Wong is not, and never has been, a customer of IBLLC.

39.  Declaratory relief is appropriate because the dispute between the parties is definite and concrete, affecting the parties' adverse legal interests with sufficient immediacy.

40.  IBLLC, therefore, requests a declaratory judgment from this Court pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 that IBLLC has no obligation to arbitrate any claims that Wong has brought or could have brought in the Arbitration.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests:

A.  Entry of a declaratory judgment that IBLLC has no obligation to arbitrate any claims that Wong has brought or could have brought in the Arbitration;

B.  Entry of an order preliminarily enjoining Wong from arbitrating against IBLLC any claims that Wong has brought or could have brought in the Arbitration;

C.    Entry of an order requiring Wong to pay any attorneys' fees, costs, and disbursements incurred by IBLLC in the Arbitration.

D.    Such other and further relief as the Court deems fair, just, and proper.

Dated:  July 31, 2026

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ Matthew E. Cooper

Timothy P. Burke
Matthew E. Cooper
101 Park Avenue
New York, NY 10178
T. 212.309.6000
F. 212.309.6001
timothy.burke@morganlewis.com
matthew.cooper@morganlewis.com

Jeff Goldman (*pro hac vice* application forthcoming)
One Federal Street
Boston, MA 02110
T. 617.951.8000
F. 617.951.8736
jeff.goldman@morganlewis.com

*Counsel for Plaintiff*