**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INTERACTIVE BROKERS LLC, a Connecticut limited liability company, <br><br> Plaintiff, <br><br> v. <br><br> STEPHANIE LIN FOON WONG, <br><br> Defendant. | Case No. 1:26-cv-06579 |

**PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION**

**TABLE OF CONTENTS**

**Page**

SUMMARY .................................................................................................................. 1

FACTS ....................................................................................................................... 3

ARGUMENT .............................................................................................................. 5

    A.    It is Black Letter Law That Being Involuntarily Subject to Arbitration Constitutes Irreparable Harm .................................................................... 5

    B.    IBLLC Is Likely to Succeed on the Merits ............................................... 7

        1.    Arbitrability Is For the Court to Decide ....................................... 7

        2.    Wong Is Not a Customer of IBLLC and Therefore Cannot Compel IBLLC to Arbitration Under FINRA Rule 12200 .................................. 7

    C.    The Balance of the Equities Favors Enjoining the Arbitration ........................ 10

    D.    No Security Should Be Required ......................................................... 11

CONCLUSION ......................................................................................................... 12

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*,
   598 F.3d 30 (2d Cir. 2010)......................................................................................5, 6

*Citigroup Glob. Mkts. Inc. v. Abbar*,
   761 F.3d 268 (2d Cir. 2014)...................................................................... *passim*

*Citigroup Global Markets Inc. v. VCG Special Opportunities Master Fund Ltd.*,
   No. 08-CV-5520 (BSJ), 2008 WL 4891229 (S.D.N.Y. Nov. 12, 2008), *aff'd*,
   *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund
   Ltd.*, 598 F.3d 30 (2d Cir. 2010) ........................................................................11, 12

*Clarkson Co. v. Shaheen*,
   544 F.2d 624 (2d Cir. 1976).....................................................................................12

*Deutsche Bank Sec. Inc. v. Roskos*,
   No. 15CV534-LTS, 2016 WL 9446863 (S.D.N.Y. Aug. 4, 2016), *aff'd*, 692 F.
   App'x 52 (2d Cir. 2017)..........................................................................................9, 10

*Goldman, Sachs & Co. v. N. Carolina Mun. Power Agency No. One*,
   No. 13 CIV. 1319 PAC, 2013 WL 6409348 (S.D.N.Y. Dec. 9, 2013).....................6

*Gov't Emps. Ins. Co. v. Patel*,
   166 F.4th 280 (2d Cir. 2026) ...................................................................................10

*Interactive Brokers LLC v. Delaporte*,
   No. 23 CIV. 5555 (NRB), 2023 WL 6795419 (S.D.N.Y. Oct. 13, 2023) .......6, 9, 12

*Land v. Rokah*,
   682 F. Supp. 3d 385 (S.D.N.Y. 2023)........................................................................9

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
   337 F.3d 125 (2d Cir. 2003).......................................................................................6

*ProShares Tr. v. Schnall*,
   695 F. Supp. 2d 76 (S.D.N.Y. 2010)..........................................................................6

*SunTrust Banks, Inc. v. Turnberry Cap. Mgmt. LP*,
   945 F. Supp. 2d 415 (S.D.N.Y. 2013), *aff'd*, 566 F. App'x 32 (2d Cir. 2014)....6, 11

*Tellium Inc. v. Corning Inc.*,
   No. 03 CIV. 8757, 2004 WL 307238 (S.D.N.Y. Feb. 13, 2004).................................6

*UBS Sec. LLC v. Leitner*,
    735 F. App'x 16 (2d Cir. 2018) .......................................................................................6, 7

*UBS Sec. LLC v. Leitner*,
    No. 17 CIV. 1365 (LTS), 2017 WL 5054739 (S.D.N.Y. May 12, 2017)............................9, 12

*UBS Sec., LLC v. Voegeli*,
    405 F. App'x 550 (2d Cir. 2011) .......................................................................................1, 6

*UBS Sec. LLC v. Voegeli*,
    684 F. Supp. 2d 351 (S.D.N.Y. 2010), *aff'd*, 405 F. App'x 550 (2d Cir. 2011)..................7, 11

*Wali v. Coughlin*,
    754 F.2d 1015 (2d Cir. 1985) *rev'd on other grounds*, *U.S. v. Thorn*, 317 F.3d
    107 (2d Cir. 2003)..............................................................................................................5

**Other Authorities**

Fed. R. Civ. P. 65(a)(2)........................................................................................................11

Plaintiff Interactive Brokers LLC ("IBLLC" or "Plaintiff") respectfully moves this Court for an order preliminarily enjoining Defendant Stephanie Lin Foon Wong ("Wong" or "Defendant") from pursuing her claim against IBLLC in an arbitration before the Financial Industry Regulatory Authority ("FINRA"), which FINRA has captioned as case no. 26-01225 (the "Arbitration").   The Arbitration names Wong, alone, as Claimant and IBLLC, alone, as Respondent.

## SUMMARY

A preliminary injunction is warranted here because, under controlling Second Circuit precedent, IBLLC satisfies both parts of the familiar two-step standard: (1) irreparable harm, and (2) likelihood of success.[1]

Irreparable harm is present here, as a matter of law, because "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law."  *UBS Sec., LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir. 2011).

IBLLC has a likelihood of success because this case is materially indistinguishable from *Citigroup Glob. Mkts. Inc. v. Abbar*, 761 F.3d 268 (2d Cir. 2014).  In *Abbar*, a customer of a foreign brokerage firm filed a FINRA arbitration against the foreign firm's US affiliate.  The investor in *Abbar* had not opened an account with the US affiliate or purchased any security directly from the US affiliate.  He nonetheless asserted that he was a "customer" of the US affiliate under FINRA Rule 12200,[2] and therefore entitled to arbitrate, because he had regularly interacted

---

[1] As discussed below, IBLLC also prevails under the alternative three-part test by showing (1) irreparable harm, (2) serious questions going to the merits and (3) a favorable balance of the equities.  However, resort to that alternative standard is unnecessary.

[2] FINRA Rule 12200 provides that FINRA member firms: . . . must arbitrate a dispute under [FINRA's Code of Arbitration Procedure] if . .  [t]he dispute is between a *customer* and a

with the US affiliate, and because the US affiliate had "provided services" to him. [3] Confronted with those facts, the Second Circuit adopted a "bright-line" rule:  Investors who hold accounts only at a foreign brokerage firm, and who do not purchase securities directly from their foreign firm's US affiliate, ***cannot*** force their disputes into FINRA arbitrations against the US affiliate because they are ***not*** "customers" of the US affiliate under FINRA Rule 12200, ***regardless*** of their direct or indirect interactions with the US affiliate.[4]

Wong is attempting to do exactly what *Abbar* held she cannot do.  She is trying to bring an arbitration against IBLLC on the purported basis that she is IBLLC's "customer," as that term is used in FINRA Rule 12200.  But Wong has never had an IBLLC account or purchased a service or security directly from IBLLC.  Instead, she is an account holder and customer of solely of Interactive Brokers Hong Kong Ltd ("IBHK").  IBLLC is IBHK's US affiliate.  And Wong has no more of a relationship with IBLLC than the investor in *Abbar* had to his foreign broker's US affiliate.  Under the specific fact pattern that was presented in *Abbar*, which is ***the same fact pattern presented here***, "[t]he only relevant inquiry in assessing the existence of a customer relationship is whether an account was opened or a purchase made."  *Abbar*, 761 F.3d at 276

---

member or associated person of a member; and [t]he dispute arises in connection with the business activities of the member or the associated person . . . .  FINRA Rule 12200 (emphasis added).

[3] *See Abbar*, 761 F.3d at 275 ("Citi NY employees certainly provided services to Abbar: they helped structure and manage the option transactions. However, Abbar did not purchase those services from Citi NY. His investment agreements were with Citi UK, and the fee for all services rendered by Citigroup personnel and offices was paid to Citi UK."); *Abbar*, 761 F.3d at 271 ("Abbar had frequent communication with the personnel at Citi NY, paid little attention to which Citigroup entity employed the people he was working with, and interacted with employees of Citigroup divisions and offices in Geneva as well as in London and New York.").

[4] *See Abbar*, 761 F.3d at 276 ("As this case illustrates, finance nowadays often involves worldwide sources, networks of information, talent and technology. But multiple inputs do not necessarily create customer relationships in different places simultaneously.").

(emphasis added).  That bright-line rule means that Wong is a customer of IBHK, and ***not*** a "customer" of IBLLC.  Because she is not IBLLC's "customer" and has no arbitration agreement with IBLLC, Wong cannot force IBLLC to arbitrate her claims in FINRA.

Accordingly, the Court should grant IBLLC's motion for a preliminary injunction.

## FACTS

On or around May 29, 2026, Wong filed a Statement of Claim ("Claim" or "Arbitration") with FINRA Dispute Resolution Services.  *See* Statement of Claim, attached to Plaintiff's Complaint ("Complaint") as Exhibit A.  The Arbitration names IBLLC as the sole Respondent. Wong's theories of liability, which IBLLC disputes, are set forth in the Claim but are not relevant to this case.  IBLLC seeks only a determination of whether Wong's claims belong in FINRA arbitration or not.  *See* Complaint, ECF No. 1 ¶ 40.

Wong never held an account at IBLLC. *See* Declaration of Katherine Schuerman, dated July _, 2026 ("Schuerman Decl.") at ¶ 2.  All of the securities purchases and sales at issue in the claim were in Wong's account at IBHK.  *See* Schuerman Decl. at ¶ 4.

IBHK is a duly organized legal entity, operating under the laws of Hong Kong.  *See* Schuerman Decl. at ¶ 6.  IBHK is not a FINRA member and never has been.  *See* Schuerman Decl. at ¶ 7.  To the contrary, IBHK is registered with, and regulated by, the Securities and Futures Commission of Hong Kong *See* Schuerman Decl. at ¶ 8.

Wong's relationship with IBHK is governed by a client agreement (the "IBHK Client Agreement"), which Wong signed in 2022.  *See* Schuerman Decl. at ¶ 9.  Included among the terms of the IBHK Client Agreement are provisions requiring any disputes against IBHK to be resolved via arbitration in Hong Kong—not arbitration before FINRA.  Specifically, the arbitration clause provides:

3

Client agrees that any controversy, dispute, claim, or grievance between [IBHK] and Client arising out of, or relating to, this Agreement, or any Account(s) established hereunder in which securities may be traded; any transactions therein; any transactions between [IBHK] and Client; any provision of the Agreement or any other agreement between [IBHK] and Client; or any breach of such transactions or agreements ("Dispute), shall be resolved by arbitration administered by the Hong Kong International Arbitration Centre under the HKIAC Administered Arbitration Rules in force when the Notice of Arbitration is submitted. The law of this arbitration clause shall be Hong Kong law. The seat of the arbitration shall be Hong Kong.

*See* Exhibit 1 to Schuerman Decl., ¶ 47(B).

Faced with this clear contractual language, Wong erroneously relies on FINRA Rule 12200 as the basis for FINRA's supposed arbitral jurisdiction over her claims. *See* Complaint, ECF No. 1 ¶¶ 28–35. She also argues that her attempt to force IBLLC into arbitration is "support[ed]" by an arbitration clause in an old, inoperative,[5] unsigned 2017 IBHK client agreement that allowed customers of IBHK, at that time, to elect arbitration before an "any exchange of which" ***IBHK*** was "a member." *See id.* ¶ 17. However, in addition to being superseded, the 2017 client agreement does not "support" a FINRA arbitration against ***anyone***. FINRA is a self-regulatory organization, not an "exchange." And IBHK has never been a FINRA member. *See* Schuerman Decl. at ¶ 7.

IBLLC attempted to avoid the need for this filing by presenting its concerns to Wong shortly after the arbitration was filed. *See* Declaration of Matthew E. Cooper ("Cooper Decl.") at ¶ 3. Wong refused to dismiss the FINRA arbitration voluntarily. *See* Cooper Decl. at ¶ 4. IBLLC then asked Wong to consent to her Arbitration being placed on FINRA's "inactive" docket during

---

[5] Wong attaches the 2017 version of the client agreement to her Claim as Exhibit A. As discussed in IBLLC's Complaint, that agreement had been superseded, via Wong's own signature, long before the events at issue.

4

the pendency of this case.[6]  *See* Cooper Decl. at ¶ 5.  Unfortunately, Wong has refused to consent to placing the Arbitration in inactive status or even to pause the Arbitration until this Court has the opportunity to review IBLLC's pleadings.  *See* "Cooper Decl." at ¶ 6.

## ARGUMENT

In order to obtain a preliminary injunction, the moving party must "show (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief."  *Citigroup Glob. Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) (internal citations omitted).  The law is clear that being forced into FINRA arbitration constitutes irreparable harm. As to the likelihood of success on the merits, the question is not whether success can be forecast with "absolute certainty" but rather whether "the probability" of prevailing is "better than fifty percent."  *Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985) *rev'd on other grounds*, *U.S. v. Thorn*, 317 F.3d 107 (2d Cir. 2003).  The probability that IBLLC succeeds on the merits in preventing an improper FINRA arbitration is significantly better than 50%, because Wong's claims are squarely precluded by *Abbar*.  Further, even if there are only "serious questions" about arbitrability, the equities tilt strongly towards a preliminary injunction.

**A.**   **It is Black Letter Law That Being Involuntarily Subject to Arbitration Constitutes Irreparable Harm**

Irreparable harm is established here as a matter of law.  "Being forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law."  *UBS Sec., LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir. 2011); *see also Merrill Lynch*

---

[6] FINRA's practice is to place an arbitration on inactive status if all parties to the arbitration agree.

*Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (stating irreparable harm occurs where a movant is "forced to expend time and resources arbitrating an issue that is not arbitrable"); *Goldman, Sachs & Co. v. N. Carolina Mun. Power Agency No. One*, No. 13 CIV. 1319 PAC, 2013 WL 6409348, at *8 (S.D.N.Y. Dec. 9, 2013) ("As a matter of law, there is irreparable harm when a party is compelled to arbitrate . . . without having agreed to arbitration because that party is forced to expend time and resources arbitrating an issue that is not arbitrable.") (internal citations omitted); *ProShares Tr. v. Schnall*, 695 F. Supp. 2d 76, 80 (S.D.N.Y. 2010) ("plaintiffs will suffer irreparable harm if compelled to arbitrate [with FINRA] defendants' claims without having agreed to arbitration, since a party cannot be required to submit to arbitration any dispute which it has not agreed to arbitrate"); *Tellium Inc. v. Corning Inc.*, No. 03 CIV. 8757, 2004 WL 307238, at *3 (S.D.N.Y. Feb. 13, 2004) ("Compelling arbitration of a matter not properly subject to arbitration constitutes per se irreparable harm.").

Given the irrefutable case law on this subject, courts in the Second Circuit routinely enjoin FINRA arbitrations rather than force a party to submit to arbitration claims brought by claimants who customers under Rule 12200. *See, e.g.*, *Interactive Brokers LLC v. Delaporte*, No. 23 CIV. 5555 (NRB), 2023 WL 6795419, at *6 (S.D.N.Y. Oct. 13, 2023) (granting IBLLC's motion for a preliminary injunction to prevent FINRA arbitration from occurring based on likelihood of success on the merits of IBLLC's claims); *see also UBS Sec. LLC v. Leitner*, 735 F. App'x 16, 18-19 (2d Cir. 2018) (affirming district court's entry of preliminary injunction enjoining defendants from maintaining FINRA arbitration where there was no agreement to arbitrate and defendants could not be considered customers of plaintiff under FINRA rules); *VCG Special Opportunities Master Fund Ltd.*, 598 F.3d at 40 (same); *SunTrust Banks, Inc. v. Turnberry Cap. Mgmt. LP*, 945 F. Supp. 2d 415, 426 (S.D.N.Y. 2013) (entering permanent injunction restraining defendant from pursuing

6

FINRA arbitration against plaintiff where there existed no arbitration agreement between the parties and defendant could not be considered plaintiff's customer under FINRA rules), *aff'd*, 566 F. App'x 32 (2d Cir. 2014); *UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2010) (entering declaratory judgment and permanent injunction restraining defendant from prosecuting their claims against plaintiff in FINRA arbitration), *aff'd*, 405 F. App'x 550 (2d Cir. 2011). These cases are indistinguishable from this matter on the first prong of the preliminary injunction framework.

### B.    IBLLC Is Likely to Succeed on the Merits

#### 1.    Arbitrability Is For the Court to Decide

Where, as here, there is no agreement to the contrary, "the question of whether or not a dispute is arbitrable is for the court to decide." *Leitner*, 735 F. App'x at 17-18; *see also Abbar*, 761 F.3d at 274.

#### 2.    Wong Is Not a Customer of IBLLC and Therefore Cannot Compel IBLLC to Arbitration Under FINRA Rule 12200

Rule 12200,[7] only applies if "[t]he dispute is between a ***customer*** and a member or associated person of a member;. . . ." FINRA Rule 12200 (emphasis added). Under the law of this Circuit, to be considered a "customer" under Rule 12200, Wong must demonstrate that she "either (1) purchase[d] a good or service from [IBLLC], or (2) ha[d] an account with [IBLLC]." *Abbar*, 761 F.3d at 275-76. As explained above, Wong never had an account with IBLLC, nor did she ever purchase anything from IBLLC.

This case does not require any novel application of the operative standard. It is on all fours with *Abbar*. Indeed, Wong's situation is, if anything, simpler than *Abbar*. The *Abbar* investor

---

[7] *See supra* n.2.

presented evidence of numerous, direct personal interactions with Citi NY, while Wong alleges only indirect contact with IBLLC. *Abbar* precludes Wong from invoking Rule 12200 on the purported basis that IBLLC "cleared" securities trades, provided software, or was otherwise involved behind the scenes.

Elaborating on the summary above, in *Abbar*, an investor who maintained an account with Citigroup Global Markets Ltd, a UK entity ("Citi UK"), invoked Rule 12200 in an attempt to force Citi UK's American affiliate, Citigroup Global Markets Inc. ("Citi NY"), to arbitrate claims related to losses from investments in the investor's Citi UK account. *Id.* at 270. Citi NY, which was a FINRA member, sought to enjoin the arbitration. *Id.* A court in this District issued an injunction based on its holding that, *as a matter of law*, when an investor "purchased no goods or services from [Citi NY] and had no account with it," but rather had an account and account agreement only with Citi UK, the investor could not claim to be a "customer" even if Citi NY had a role in advising or effecting the investor's securities transactions. *Id.*

The Second Circuit affirmed, adopting the District Court's legal standard and noting that the district court's ruling was "sensible and efficient." *Id.* at 273. In affirming, the Second Circuit established a "bright-line rule" that, in a case where the customer of a US brokerage firm's foreign affiliate attempts to initiate a FINRA arbitration against the US firm "[t]he only relevant inquiry in assessing the existence of a customer relationship is whether an account was opened or a purchase made" **with the US firm.** *Id.* at 276.

The allegations Wong makes about IBLLC's alleged involvement with her IBHK account are controlled by *Abbar*. Wong alleges that IBLLC cleared or processed certain trades Wong made through her IBHK account in stocks traded on the NASDAQ and New York Stock Exchange. *See* Exhibit A to the Complaint, ECF No. 1-1 ¶ 17. Wong also makes much of IBLLC's role as the

8

developer of the security program that Wong claims failed to prevent the unauthorized user(s) from gaining access to her account. *See id.* ¶¶ 18-20, 35-42. But Wong does not contest the only fact that matters under *Abbar*: She never had an account with IBLLC, nor did she ever purchase a good or service directly from IBLLC. Wong's only relevant account was at IBHK, and the relevant purchases and sales were all in her IBHK account. Under *Abbar*, even if IBLLC served as the clearing agent for the transactions Wong claims to have caused her damages, and even if IBHK used technology supplied by IBLLC, Wong was still never a customer of IBLLC. *See Abbar*, 761 F.3d at 275-76.

Subsequent decisions in this District, certain of which have been affirmed by the Second Circuit, reinforce *Abbar*'s controlling authority here. A prime example is *Deutsche Bank Sec. Inc. v. Roskos*, No. 15CV534-LTS, 2016 WL 9446863, at *5 (S.D.N.Y. Aug. 4, 2016), *aff'd*, 692 F. App'x 52 (2d Cir. 2017). In *Roskos*, investors held accounts only at a US firm's foreign affiliate but "numerous ancillary transactions were allegedly performed on [the investors'] behalf" by the US firm. Judge Swain held that *Abbar*'s bright line test applied and that the investors were not the US firm's "customers" under Rule 12200. The Second Circuit affirmed that holding on the same grounds. Other cases rejecting investors' efforts to expand the definition of "customer" under FINRA Rule 12200 include *Land v. Rokah*, 682 F. Supp. 3d 385, 393 (S.D.N.Y. 2023) (granting preliminary injunction where the plaintiff "raised serious questions" as to whether the defendant was a customer pursuant to Rule 12200); *Delaporte*, 2023 WL 6795419, at *6 (granting motion for preliminary injunction where the "defendants have not established themselves as customers of IBKR or an associated person of IBKR for purposes of FINRA Rule 12200"); and *UBS Sec. LLC v. Leitner*, No. 17 CIV. 1365 (LTS), 2017 WL 5054739, at *2 (S.D.N.Y. May 12, 2017) (granting

9

preliminary injunction where the "[d]efendant did not qualify as a 'customer' under Rule 12200, and [the plaintiff] ha[d] established that it will likely succeed on the merits of its claim.").

### C.    The Balance of the Equities Favors Enjoining the Arbitration

Because *Abbar* (and *Roskos*) were decided, and affirmed by the Second Circuit, on facts so close to those here, IBLLC has shown a likelihood of success on the merits. But even if IBLLC has raised only serious questions going to the merits, a preliminary injunction is appropriate. Wong would suffer no harm relevant to the operative standard if a preliminary injunction is granted.[8]    On the other hand, both parties stand to suffer avoidable harm if the preliminary injunction is denied.

To begin with, IBLLC does not seek a preliminary injunction that would require Wong to compromise any substantive rights in the Arbitration should this Court disagree with IBLLC on the merits. The only relief IBLLC is seeking on a preliminary basis is an order requiring Wong to consent to the Arbitration being moved to FINRA's inactive docket while this case proceeds. Wong waited approximately a year to file her arbitration. Given that this case can be decided entirely as a matter of law, the additional delay is unlikely to be prolonged or to prejudice Wong.

Second, the preliminary injunction would save both parties from unnecessary expense.[9] If the Arbitration proceeds, both parties will be litigating in two forums simultaneously. While the costs of litigation in this Court may be unavoidable, the costs of arbitrating while this case proceeds

---

[8] *See, e.g., Gov't Emps. Ins. Co. v. Patel*, 166 F.4th 280, 297 (2d Cir. 2026) (While it may be true that Defendants would face some hardship from the grant of a stay, we have already explained that the only harm they could suffer would be financial: a delay in securing reimbursement for the benefits to which they assert they are entitled. Defendants do not seriously claim that they would not eventually receive payment on their meritorious claims. Any harm Defendants incur, then, could "be remedied by monetary damages should they later prevail.")

[9] Further, absent a preliminary injunction, IBLLC can be penalized for any failure to meet arbitration deadlines. *See, e.g.*, FINRA Rule 12212.

are avoidable. *See Citigroup Global Markets Inc. v. VCG Special Opportunities Master Fund Ltd.*, No. 08-CV-5520 (BSJ), 2008 WL 4891229 (S.D.N.Y. Nov. 12, 2008), *aff'd*, *Citigroup Global Markets, Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30 (2d Cir. 2010) (noting that "if the court were to deny the preliminary injunction motion, [plaintiff] would be forced to expend time and resources to defend itself in an arbitration to which it may ultimately be determined not to have been a proper party, and any award would be unenforceable").

Finally, to the extent Wong seeks to avoid a delay in the adjudication of her substantive claims,[10] she can do so. This case bears all the hallmarks of forum shopping. More precisely, Wong instituted the Arbitration with full awareness that she was attempting to arbitrate claims that IBLLC would not view as arbitrable—that is why she spends much of her statement of claim alleging the supposed jurisdictional basis for her claims. Wong always was, and still remains, able to bring her claims in an appropriate forum or forums. Wong *chose*, instead, to pursue her claims in a manner that would predictably lead to litigation over arbitrability. Any delay resulting from that choice, including via a preliminary injunction, is self-inflicted.

### D.     <u>No Security Should Be Required</u>

As noted above, courts in this District routinely encounter, and grant, motions for preliminary injunctions in cases where a claimant seeks to bring a FINRA arbitration despite not being a customer of a FINRA firm. *See supra* at 5. In many instances, those proceedings have involved a consolidation of the motion for preliminary injunction with a decision on the merits. *See* Fed. R. Civ. P. 65(a)(2). *See SunTrust Banks, Inc.*, 945 F. Supp. 2d at 426; *Voegeli*, 684 F. Supp. 2d at 356-57. Rule 65(c) is not implicated when an injunction issues in conjunction with a decision on the merits. In the cases where a preliminary injunction was granted prior to a decision

---

[10] *See also* n.8 *supra*.

on the merits, courts have not typically required any party to post security. *See generally Delaporte*, No. 23 CIV. 5555 (NRB), 2023 WL 6795419 (S.D.N.Y. Oct. 13, 2023); *UBS Sec. LLC v. Leitner*, No. 17 CIV. 1365 (LTS), 2017 WL 5054739 (S.D.N.Y. May 12, 2017); *Citigroup Glob. Markets Inc. v. VCG Special Opportunities Master Fund Ltd.*, No. 08-CV-5520BSJ, 2008 WL 4891229 (S.D.N.Y. Nov. 12, 2008).  Indeed, although Fed. R. Civ. P. 65(c) allows the Court to require security "in an amount that the court considers proper to pay the costs and damages sustained by any part found to have been wrongfully enjoined or restrained," it is within the discretion of the Court to waive the requirement.  *See Clarkson Co. v. Shaheen*, 544 F.2d 624, 632 (2d Cir. 1976) (stating that because "the amount of any bond to be given upon the issuance of a preliminary injunction rests within the sound discretion of the trial court, the district court may dispense with the filing of a bond.") (internal citations omitted).

For the avoidance of doubt: in the event a preliminary injunction issues here in advance of a decision on the merits of IBLLC's Complaint, bond should not be required because Wong faces no cognizable harm in the (unlikely) event that IBLLC obtains a preliminary injunction and then fails to obtain a declaratory judgment on the merits.  Wong's preexisting request for prejudgment interest in the Arbitration (*see* Claim at ¶ 117) is more than sufficient to compensate her, should she prevail in opposing a declaratory judgment after a preliminary injunction issues.

## CONCLUSION

For the foregoing reasons, the Court should enter a preliminary injunction that requires Wong to agree that her Arbitration should be placed on "inactive" status while this Court adjudicates whether she has any right to arbitrate claims against IBLLC.

12

Dated:  July 31, 2026

**MORGAN, LEWIS & BOCKIUS LLP**

By: /s/ *Matthew E. Cooper*

Timothy P. Burke
Matthew E. Cooper
101 Park Avenue
New York, NY 10178
T. 212.309.6000
F. 212.309.6001
timothy.burke@morganlewis.com
matthew.cooper@morganlewis.com

Jeff Goldman (*pro hac vice* application forthcoming)
One Federal Street
Boston, MA 02110
T. 617.951.8000
F. 617.951.8736
timothy.burke@morganlewis.com
jeff.goldman@morganlewis.com

*Counsel for Plaintiff*

13

**CERTIFICATE OF COMPLIANCE**

I, Matthew E. Cooper, hereby certify that this Memorandum of Law in Support of Plaintiff's Motion for a Preliminary Injunction consists of 3,956 words, which does not exceed the limits established in Local Rule 7.1(c), and otherwise conforms with the formatting requirements established in Local Rule 7.1(b).

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 31st day of July 2026, at New York, New York.

*/s/ Matthew E. Cooper*
Matthew E. Cooper